Appeal from Westchester County Court.

Action by Abram H. Cole and another, doing business as A. H. Cole & Son, against Clarence M. Mendenhall. Judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Herbert A. Knox, for appellant.

Charles A. Van Auken, for respondents.

WOODWARD, J. The facts, as they have been found by the jury upon sufficient evidence, appear to be as follows: The plaintiffs are engaged in the real estate business in New Rochelle. The defendant went to them, looking for a house to rent. During the time that the parties were looking for a suitable house, the plaintiffs and defendant discovered a house known as the "Haulenbeek house." It bore a sign stating that it was for sale. Defendant asked plaintiffs to make inquiries in reference to the same, and some negotiations were undertaken, resulting in the owner of the house offering to accept $15,000 for the same. Subsequently the defendant rented a place through the efforts of the plaintiffs, and then entered into a direct negotiation with Haulenbeek 'for the purchase of the Haulenbeek house. This resulted in Haulenbeek agreeing to accept $13,500 for the premises, provided he was not called upon to pay any broker's commissions. The defendant went to the plaintiffs, and the latter, for a consideration of $100, agreed not to insist upon any commissions from Haulenbeek, and with this understanding the deal between the defendant and Haulenbeek was consummated.

It is not necessary to determine here whether the plaintiffs had any valid claim against Haulenbeek. The latter assumed that there might be a claim against him for commissions, and he refused to sell at the terms which the defendant was willing to offer, except on condition that he should be relieved of such claim, and the plaintiffs, having a clear legal right to litigate the question of Haulenbeek's liability to them, relinquished the right upon the promise of the defendant to pay him $100, and the defendant was thus enabled to carry out his purpose and secure the premises which he desired at $1,500 less than originally demanded for the same. We are of opinion that there was such a forbearance, for the benefit of the defendant, on the part of the plaintiffs, as to afford a consideration for the promise, and that the judgment in favor of the plaintiffs should be supported.

The judgment and order appealed from should be affirmed, with costs. All concur.

(118 App. Div. 555)

WILLIAMS v. FIRST NAT. BANK OF UTICA.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1907.)

MASTER AND SERVANT—INJURIES TO SERVANT—DEFECT IN APPLIANCE—SCAFFOLD.

A plank, laid across two wooden horses, eight to ten feet high, on which laborers stood while inside a building engaged in putting a casing into a window frame, was not a scaffold, within Labor Law (Laws 1897, p. 467, c.

415, as amended by Laws 1899, p. 350, c. 192) § 18, providing that a person, employing or directing another to perform labor in repairing or altering a house or building, shall not furnish scaffolding or other mechanical contrivances which are unsafe.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 207.]

Spring, J., dissenting.

Appeal from Trial Term, Oneida County.

Action by William P. Williams against the First National Bank of Utica. From a judgment in favor of plaintiff, and from an order denying a new trial upon the minutes, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Miller, Fincke & Brandegee, for appellant.

Lewis, Watkins & Titus, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

The action was to recover damages for injuries to the plaintiff, alleged to have resulted from defendant's negligence. The plaintiff was a carpenter, and at the time of the accident was working in the defendant's bank building, which was being reconstructed and repaired. With another carpenter he was standing upon a plank, laid across two wooden horses, engaged in putting a casing into a window frame. The plank was eight to ten feet above the floor. It broke, and the two men fell, and plaintiff received the injuries for which the recovery was had. The action was brought under section 18 of the labor law (chapter 415, p. 467, of Laws of 1897, as amended by chapter 192, p. 350, Laws 1899) and was so tried and submitted to the jury. The recovery must therefore be sustained, if at all, under the statute.

Section 18 of the labor law provides:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper and which are not constructed, placed or operated so as to give proper protection to the life and limb of a person so employed or engaged."

The court held as matter of law that the relation of master and servant existed between the defendant and plaintiff, and that the structure was a scaffold under section 18 of the statute. It submitted to the jury only the question whether the scaffold was safe, suitable, and proper, charging that, if it was not so, the plaintiff was entitled to recover. The defect complained of was only that the plank was not strong enough for the purposes it was used. There was considerable evidence given bearing upon the relations between the plaintiff and the defendant and the firm of Roberts & Williams, whose general employé plaintiff was. It seems to us the question as to whether the relation of master and servant existed between the plaintiff and defendant was, at least, a question for the jury, and not for the court; and,

if for the court, it must be based solely upon the evidence given in behalf of defendant, and should have been determined in defendant's rather than plaintiff's favor.

Moreover, this structure was not such a scaffold as was within the contemplation of the Legislature in enacting the labor law. Schapp v. Bloomer, 181 N. Y. 125, 73 N. E. 563; Stokes v. N. Y. Life I. Co., 112 App. Div. 77, 98 N. Y. Supp. 135; Sutherland v. Ammon, 112 App. Div. 332, 98 N. Y. Supp. 574. In the Schapp Case the court, among other things, said:

"The limitation to specified cases shows that it [the statute] was not intended to include scaffolding in all cases. What the Legislature evidently had in mind was scaffolding on buildings and structures, where its use was obviously dangerous to life and limb of an employee thereon in case of a fall. If ordinary staging, put up in a room from four to six feet above the floor, to facilitate the placing of fixtures, was intended to be included as among the specified cases, we should find it difficult to suggest a scaffold that would not fall within the limitation of the statute. To so hold would practically extend it to all cases in which scaffolds are used. This would be an unauthorized departure from the rule of construction to which we have called attention."

This language goes farther than holding that that case was not covered by the statute, because the scaffold was being used for putting up of shafting, a use not covered by the language of the statute. This same principle was applied in the two Appellate Division cases cited above.

Again, this structure was a movable one, composed of two horses and a plank, and prior to the accident it was moved from place to place by the plaintiff and his co-laborers. The adjustment of the plank upon the horses was within the control of these men, and was made by them before the accident occurred. They had worked upon it safely for some time before it was changed and the plank was readjusted by them, and it had served them properly down to the time the accident occurred. If in the readjustment the horses had been placed a little nearer together, it would not have broken when it did. There were many other planks about the premises, which could have been used by these men to re-enforce the one they were using. Under these circumstances, certainly, the defendant could not be held liable for the injuries to the plaintiff, for which plaintiff and his co-laborer were alone responsible. Rotondo v. Smyth, 92 App. Div. 153, 86 N. Y. Supp. 1103; Stokes v. N. Y. Life Ins. Co., 112 App. Div. 77, 98 N. Y. Supp. 135; Hutten v. Holbrook, etc., Cont. Co. (C. C.) 139 Fed. 734.

Judgment and ordered reversed, and new trial ordered, with costs to the appellant to abide the event, upon questions of law and fact.

All concur, except SPRING, J., who dissents, and KRUSE, J., who concurs in result only.

SPRING, J. (dissenting). The plaintiff was a carpenter in the general employment of Roberts & Williams, who were contractors. The defendant was repairing and altering its bank building, and employed a man named McDermott to oversee the work and take charge of the men employed. The directors of the bank carried on the bank-

ing business while the repairs on the banking office were going on. They desired to have the men do the work by the day and under their control, and at times when it would cause the least inconvenience to the banking business. They accordingly arranged with Roberts & Williams to furnish carpenters to them as they were needed during the day. They paid Roberts & Williams a fixed sum by the day for the men, and also a commission for supplying them. Roberts & Williams had nothing to do with the repairs or alterations. The bank furnished all the materials and provided its own superintendent. The evidence on this branch of the case was undisputed, and came from the president of the defendant and McDermott, and the trial court held as matter of law that the relation of master and servant existed between the defendant and the plaintiff. I think this ruling is correct. Wyllie et al. v. Palmer et al., 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; McInerney v. Del. & Hud. Canal Co., 151 N. Y. 411, 45 N. E. 848; Hallett et al. v. N. Y. C. & H. R. R. Co., 167 N. Y. 543, 60 N. E. 653.

In the case first cited the defendants furnished fireworks for a Fourth of July display in the city of Auburn at the instance of a committee of its citizens, who had the matter in charge. The defendants, at the request of the committee, sent a man, with a boy as a helper, from Rochester to aid in discharging the fireworks. They were in the general employ of the defendants, but acted under the direction of the citizens' committee; and when the boy was manipulating the rockets one of them was discharged, injuring the plaintiff. The alleged liability of the defendants was based upon the fact that the boy, who committed the act, was the servant of the defendants; but the Court of Appeals held otherwise. The court used this language, at page 257 of 137 N. Y., page 384 of 33 N. E. (19 L. R. A. 285):

"The fact that the party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time and who has the right to control and direct his conduct."

The same proposition was restated in Higgins v. Western Union Telegraph Co., 156 N. Y. 75, at page 78, 50 N. E. 500, at page 501, 66 Am. St. Rep. 537:

"The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. Servants who are employed and paid by one person may nevertheless be ad hoc the servants of another in a particular transaction, and that, too, when their general employer is interested in the work."

When the plaintiff first came to work, a carpenter was engaged in putting the casing into the windows, which were 13 or 14 feet in height. He was standing on a plank resting on two sawhorses about 10 feet high and 6 or 7 feet apart. The sawhorses were permanent structures, hinged at the top, and had been used "a good deal" before the plaintiff commenced work there. The plank was 10 or 12 feet long, 10 inches in width, and 2 inches thick, and was covered with mortar. The scaffolding was in place before the plaintiff used it. He was directed by McDermott to go upon the plank and assist Owens, the other carpenter. The two worked together that day, and until the middle

of the forenoon of the second day, when the plank broke, precipitating the plaintiff to the floor and seriously injuring him.

In the first place, the defendant was "repairing," or "altering" its building within the purview of the labor law (section 18, c. 415, p. 467, Laws 1897). I think the sawhorses, with the plank for the workmen to stand upon for making the repairs, constituted a scaffolding, within the meaning of this law. No particular form of construction is provided for in the statute. It is expected to be a temporary structure for men to stand upon to do the work. Whether made at the side of a building by nailing cross-pieces to supports for the planks to rest upon, or by sawhorses in order that they may be changed the more readily, they serve the same purpose. In interior alterations it is well known that a frequent method of constructing the scaffolding is by sawhorses with plank laid upon them. This method prevents injuring or defacing the interior of the buildings. These sawhorses are often made of great height for use in high rooms. It is just as important that the men be protected from a dangerous temporary arrangement of this kind as from a more substantial staging on the exterior of a building.

The cases cited in the prevailing opinion, to my mind, do not sustain the proposition that this arrangement did not come within the scope of the statute. In Schapp v. Bloomer et al., 181 N. Y. 125, 73 N. E. 563, the defendants had erected a new factory, and were engaged in putting up shafting and placing machinery in the building. The men built a scaffolding from four to six feet high, by laying planks upon horses and upon rolls of paper in the room, and also by placing one end upon a board nailed to an upright post and supported by a brace. The plaintiff was present when this contrivance was arranged, but did not participate in its construction. The court held that the placing of this shafting and machinery was not "the erection, repairing, altering or painting of a house, building or structure," and that the labor law limited the scaffolding within the act to these "specified cases." The court did not hold that the temporary appliance for the men to stand upon was not a scaffolding, if the work for which it was utilized had been within the compass of the statute. In Stokes v. New York Life Insurance Co., 112 App. Div. 77, 98 N. Y. Supp. 135, the plaintiff fell from a temporary scaffolding when washing a ceiling. The act does not include that kind of work, and the court so held. Likewise, in Sutherland v. Ammann, 112 App. Div. 332, 98 N. Y. Supp. 574, the decision was placed upon the ground that the work which the plaintiff and his fellow workmen were engaged in was not "in the erection, repairing, etc., of a house, building or structure." These cases do not depend on the character of the scaffolding. If the same kind of scaffolding had been at the outside of the building for the men to stand on to nail clapboards on the house, or to put a cornice under the eaves, a different decision might have been rendered. In this case the scaffolding, without question, was for the purpose of performing work mentioned in the statute. It was, therefore, one of the "specified cases" within the legislative intention, where the safety of the plaintiff was required to be guarded. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662; Swenson v. Wilson & Bailey Mfg. Co., 102 App. Div. 477, 92 N. Y. Supp. 849.

During the time the plaintiff was at work on this scaffolding it was moved two or three times to accommodate the plaintiff and his fellow workman. The men moved one of the sawhorses. The plaintiff with a stick or board held up the end of the plank which had rested on the sawhorse moved, and the men then pushed along the other sawhorse; the plaintiff carrying along the end of the plank until it rested on the sawhorse again. The claim is made, and is sustained in the prevailing opinion, that the plaintiff was engaged in readjusting this scaffold, and consequently cannot recover. The only theory upon which this claim can be founded is that the plaintiff knew or should have known that the plank was unsound and unsafe. The primary duty of furnishing a scaffold which is not "unsafe, unsuitable or improper" is cast upon the master. It is an affirmative obligation. Probably, if the contrivance furnished is manifestly unsafe, an employé injured in its use cannot recover for injuries; but the mere fact that he may have known does not relieve the master, who has disregarded a plain duty imposed upon him for the protection of his servant. This plank was in place when the plaintiff commenced work. He had nothing to do with its selection. He had a right to assume that the defendant had performed his duty until he was apprised that the plank was unsound, or it was obviously in that condition. Jenks v. Thompson, 179 N. Y. 20–26, 71 N. E. 266.

As already noted, the plank was covered with lime and mortar; and, while now the record discloses undisputably that it was a defective and improper plank for the purpose for which it was used, the evidence fairly shows that the plaintiff could not have discovered its unsuitability without a closer examination than he was called upon to make. In moving this contrivance the plank was three or four feet above his head, and it does not appear that the defect was discoverable from that distance, and the plaintiff would not, naturally, have his eyes upward toward a plank covered with mortar.

In Madden v. Hughes, 185 N. Y. 466, 78 N. E. 167 where, in one aspect of the case, the plaintiff was to construct the scaffold, the court, in passing upon the relative liability of the parties, said, at page 470 of 185 N. Y., page 168 of 78 N. E.:

"It was the duty of the master to furnish proper and safe material for the construction of the scaffold. It was the duty of the plaintiff, if ordered to construct a scaffold, to construct it in such a manner as to make it safe for him to work upon. It was his duty to use only safe and proper material. If, however, the planks used by him on this occasion were the planks furnished by the defendants, and he did not know at the time of using them that they were unsafe and improper, he would not be chargeable with contributory negligence."

In Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266, the plaintiff, a carpenter, who was not familiar with this kind of scaffolding, had been at work upon a scaffold made of hemlock boards, and which was unsafe because composed of that material. He had been at work upon this particular scaffold for about half an hour, and observed that "it was springy and that the boards were not nailed. He knew that it was composed of three boards or planks, laid upon joists or brackets; but we find no evidence to show that he had any knowledge that the boards

were hemlock only seven-eighths of an inch in thickness and laid upon brackets nine feet apart." The court further said:

"The proof was not, we think, sufficient to justify the trial court in holding, as matter of law, that the scaffold was obviously unsafe, or that the plaintiff had such knowledge of the manner of its construction and of the materials employed as to require the legal conclusion that he knew all the facts, or that they were obvious, and that in using it he voluntarily assumed the risks of its safety. He had the right to assume that the defendant had performed the duties imposed upon him by law, or, if not, that he would be notified. 'It is well settled that the risks of the service a servant assumes in entering the employment of a master are those only which occur after the due performance by the employer of those duties which the law enjoins upon him.'"

In the present case the questions of contributory negligence and assumption of risk were submitted to the jury, and the verdict exculpated the plaintiff of any misconduct and of the charge that he knew the condition of this plank. Assumption of risk was for the defendant to prove affirmatively, and it has failed to establish as matter of law that the plaintiff had sufficient knowledge of this defective plank to relieve the defendant of liability; the other essential facts having been proven. In this case the positive duty was upon the defendant under the labor law to provide a scaffold for the plaintiff which was not "unsafe, unsuitable or improper," and that it was "so constructed, placed and operated as to give proper protection to the life and limb" (section 18, c. 415, p. 467, Laws of 1897) of the plaintiff. This imperative duty could not be delegated. Even if it did furnish competent men and suitable materials, the obligation still remained. When the plaintiff commenced work, the plank upon which he was directed by the defendant's superintendent to stand to perform the work of the defendant was of hemlock, which was not suitable material for that purpose, and the plank was defective and unsound. The plank was covered over with lime and mortar, so that the material or defect was not seen by the plaintiff, and it was not obvious to him. While at work, this defective unsafe plank broke, without fault on his part, and he was injured. I think the defendant is liable, if any effect whatever is to be given to the labor law, designed to protect employés by rendering their work less dangerous.

The judgment should be affirmed.