## ANDERSON v. MILLIKEN BROS., Inc.

(Supreme Court, Appellate Division, Second Department.   January 10, 1908.)

1. MASTER AND SERVANT—DEATH OF SERVANT—DEFECTIVE SCAFFOLD—QUESTION FOR JURY.

In an action for death of a servant by falling from a plank placed across iron braces in an elevator bin of great depth while he was securing braces in the bin, whether the method of placing and securing the planks on the braces without fastening them thereto was safe was for the jury, under Labor Law, Laws 1897, p. 467, c. 415, § 18, providing that no employer shall furnish or erect a scaffold for the use of his servants which is unsafe, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1024.]

2. SAME—DELEGATION OF DUTY.

The duty of a master to furnish and provide a suitable and safe scaffold on which his servants can work, imposed by Labor Law, Laws 1897, p. 467, c. 415, § 18, is one which the master cannot delegate, or avoid liability for nonperformance by an attempted delegation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 175, 385.]

3. SAME—ACTS OF SERVANTS—DIRECTION OF FOREMAN—METHOD OF WORK.

Plaintiff's intestate and another were employed to put certain braces in an elevator bin of great depth, and were directed by the foreman to use planks placed across the braces to stand on. The foreman gave them no instructions as to how to place the planks, and did not furnish any ropes or fastenings. Intestate and his companion merely laid the planks across the braces without fastening of any sort, and one of the planks slipped under intestate and precipitated him to the bottom of the bin, causing his death. Held that, though intestate and his companion placed the planks, neither of them devised such method or followed it until ordered to do so by defendant's foreman in charge of the work, and hence defendant was responsible for failure to provide a safe scaffold, as required by Labor Law, Laws 1897, p. 467, c. 415, § 18.

4. SAME—NOTICE OF INJURY.

Where the use of plank as a scaffold in the construction of an elevator bin was directed by defendant's foreman in charge of the work, and was thereby necessarily known to him, and the manner of use was dangerous, resulting in the death of a servant, no notice of the conditions resulting in the servant's death was required as a condition to defendant's liability under Employer's Liability Act, Laws 1902, p. 1750, c. 600, § 3, providing that no such notice is required if the defect or negligence was known to the employer or a superior person prior to the injuries.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 243, 251.]

5. SAME—ASSUMED RISK.

A master being required to afford his servant a safe scaffold by Labor Law, Laws 1897, p. 467, c. 415, § 18, the servant did not assume the risk of injury by reason of a defective scaffold, under the rule that a servant only assumes such risks as occur after the due performance by the employer of the duties enjoined on him by law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 551–553.]

Miller, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Allie Anderson, as administratrix of the estate of Anton Anderson, deceased, against Milliken Bros., Incorporated. From a

judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before WOODWARD, JENKS, RICH, MILLER, and GAYNOR, JJ.

John C. Robinson, for appellant.

Thomas J. O'Neill (J. Brownson Ker, on the brief), for respondent.

RICH, J. This action is brought in behalf of the next of kin of plaintiff's intestate to recover the damages sustained as the result ot his death, alleged to have been caused by the negligence of defendant. The jury have resolved the questions of fact in favor of the plaintiff, and the only question demanding serious consideration is whether the evidence sustains their verdict.

The defendant was engaged as contractor in the construction of a number of steel grain bins for the Hecker-Jones-Jewell Milling Company, and the work had been going on for several weeks before the plaintiff's intestate was injured. The bins were square in shape, about 12 by 13 feet on the inside, and upwards of 100 feet high. They adjoined each other, and were so constructed that the side of one bin formed the side of the next adjoining bin. Each was built in sections about 25 feet in height, only one section being constructed at a time, and seven men, of whom plaintiff's intestate was one, were employed in the work. On the inside of each bin, one above another, at equal distances of about 5 feet, four iron braces were placed extending across the corners diagonally from side to side. From the apex of the corner to the end of the brace, on each side, was about 4 feet, and' from point to point, in a diagonal line, about 5½ feet. Each section was first put in place, and then, commencing at the bottom, the braces were placed and fastened, before the next section was placed. Plaintiff's intestate and one Stubb were engaged in adjusting and' placing the braces, one holding them in position while the other put bolts through the brace and side of the bin, on which workmen in the adjoining bin placed nuts and tightened them until they held the brace firmly in position. A boatswain's chair was used in the work, which was suspended from the top of the next higher section by a block and fall; one of the hooks holding which was hooked over the top of such section. The work of building each bin was commenced at the bottom, and as the sections were placed this hook had to be pulled out from between the plates and hooked over the top of the last placed section. This was accomplished by the use of a pinch bar, with which the plates were pried apart until the hook could be pulled out. When the work of building these bins was started, the plaintiff's intestate and Stubb placed the braces in position by standing on the highest brace, from which point they could place the next higher brace. Only one man could work at a time in this way, and defendant's foreman directed them to use plank, that their work might be done quicker and better. He gave them no instructions as to how to place or use the plank, did' not tell them to tie or fasten them to the braces to prevent their slipping or shifting, and did not furnish them with ropes or fastenings of any kind to use for that purpose; nor does it appear from the evidence that

materials that might have been used for that purpose were available. The men procured from lumber on the premises two spruce planks, 2 inches thick, 10 inches wide, and 10 or 11 feet long, which they placed on the braces without fastening of any kind, and thereafter stood upon them while adjusting the braces, moving them as the work required. They had followed this method from the time they were ordered to use plank without the happening of any accident. At the time plaintiff's intestate was injured the bin upon which he was working had been constructed to the height of 110 feet. He was standing upon the two planks, resting upon the braces in the manner described, on the inside of the bin, about 7 feet below its top, attending to his work, when it became necessary to move the hook attached to the boatswain's chair to some other position. A pinch bar was handed him, with which he proceeded to pry the plates apart to release the hook. While engaged in this work the planks on which he stood shifted or slipped to one side, causing him to lose his balance, and he fell to the bottom of the bin (a distance of about 100 feet) and was killed.

The plaintiff's cause of action is based upon the provisions of section 18 of the labor law (Laws 1897, p. 467, c. 415), and the question whether the defendant's method or system of placing and securing the planks forming the scaffold upon which the plaintiff's intestate was working, was safe, suitable, and proper, and such as to give him proper protection, was a question of fact for the jury. Haggblad v. Brooklyn Heights R. R. Co., 117 App. Div. 838, 102 N. Y. Supp. 1039. The picture presented to them by the evidence was that of a hollow steel square, 12 by 13 feet inside measurement, and 110 feet high, on the inside of which the plaintiff's intestate was standing upon a scaffold composed of two planks, each 10 inches wide, resting upon two of the corner brackets affording them a support for a distance of 4 feet and 6 inches from the side of the bin, where the braces ended. The planks were not fastened together, and no precaution of any kind was taken to prevent their slipping, shifting, or working off the end of the brace, and there was nothing to prevent the workman, should he lose his balance by reason of the shifting or slipping of the planks, or as the result of a misstep, from falling to the bottom of the bin; and the jury reached the conclusion, which the evidence warrants and sustains, that such method and system, directed and employed by the defendant, was not a compliance with the requirements of the statute. Although the plaintiff's intestate and Stubb placed the planks upon which they stood, neither of them devised such method, or followed it, until ordered to do so by defendant's foreman in charge of the work. They only helped to carry out the plan, not of their own volition, but in accordance with the order of their superior. The statute placed the duty upon the defendant of adopting a safe, suitable, and proper method or system of placing and securing the planks forming the scaffold upon which its employés were to work, and that duty could not be delegated, nor liability evaded by attempted delegation. In these respects the case is squarely within the decision of this court in Haggblad v. Brooklyn Heights R. R. Co., supra.

Our attention is directed to Williams v. First Nat. Bank, 118 App. Div. 555, 102 N. Y. Supp. 1031, Rotondo v. Smyth, 92 App. Div. 153,

86 N. Y. Supp. 1103, Wingert v. Krakauer, 92 App. Div. 223, 87 N.
Y. Supp. 261, and Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, 55
Am. St. Rep. 630, as sustaining the defendant's contention that be-
cause the plaintiff's intestate and Stubb placed the plank upon which
the former was standing when the accident occurred, and the shifting
or slipping of the plank being the sole cause of the accident, the evi-
dence failed to establish negligence on the part of the defendant, or the
violation of any common-law or statutory duty which it owed the de-
ceased, for which reason the trial court erred in not dismissing the
complaint. The law declared in these cases does not control the dis-
position of the case at bar, nor sustain the contention. It has no appli-
cation to the facts appearing in this record. In the Williams Case the
accident occurred by reason of the manner in which a plank upon
which the plaintiff was standing, and which broke under his weight,
was placed upon two horses, and the court held that, the employer
having furnished suitable and proper materials for doing the work,
their adjustment was within the control of the men using them, for
which adjustment the defendant was not responsible. In the Rotondo
Case the defendant instructed the deceased and another of his em-
ployés to construct a scaffold and put it up on which to do his work.
Proper and suitable material for a safe construction was at hand; but
it was constructed without fastening to prevent its swaying out from
the building. The deceased stepped from a window to the scaffold,
which swayed out from the building causing his fall, and the court
held that for the omission to properly fasten it the defendant was not
liable. The Wingert Case involved substantially the same facts, and
was disposed of on the same principle; and the Kimmer Case was
decided before the enactment of the statute upon the provisions of
which the plaintiff's cause of action rests. In each of these cases
proper materials were at hand, by the use of which safe and suitable
scaffolds could have been constructed, and the dangerous conditions
were caused by the failure of the employés to use the materials so
provided; while in the case at bar no material was furnished or shown
to be available to fasten and prevent the planks from shifting or slip-
ping on the braces on which they were placed. The direction of the
defendant was to use plank. The only material provided was the
plank. They could be used in no other manner, under the circum-
stances shown, than by laying them on the braces.

The defendant's contention that the provisions of section 3 of the
employer's liability act (Laws 1902, p. 1750, c. 600) precludes a re-
covery because of the failure of the deceased to give notice or infor-
mation of the conditions resulting in his death, to the defendant or to
some person in its service superior to himself, is without merit, as the
case is within the exception contained in the section:

"Unless it shall appear on the trial that such defect or negligence was
known to such employer, or superior person, prior to such injuries to the em-
ployé."

It was established upon the trial of this action, without contradiction,
that the use of the plank was directed by defendant, and consequently
necessarily known to defendant's foreman in charge of the work. It

is contended that the evidence establishes an assumption of the risk by plaintiff's intestate, because of his knowledge of the risk and danger necessarily attendant upon the use of the planks in the manner in which he used them, and that the trial court should have so held as matter of law. This contention is answered by the well-settled rule of law that the risks of the service which a servant assumes in entering the employment of a master are those only which occur after the due performance by the employer of those duties which the law enjoins upon him. Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266. This rule the learned trial justice asserted in his charge to the jury, in submitting to them the question whether the deceased was shown by the evidence to have assumed the risk of injury, and no exceptions were taken by the defendant to the submission of this question.

The judgment and order must be affirmed, with costs. All concur, except MILLER, J., who dissents.

MILLER, J. (dissenting). The rule requiring the master to provide a safe method or system cannot be applied to a simple thing like the placing of a plank on two braces. The so-called scaffold, a plank, was moved by the deceased himself from section to section as the work progressed, and I do not think it was intended by the statute (section 18 of the labor law [Laws 1897, p. 467, c. 415]) to make the master liable to a servant for the negligence of the latter.